The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. You can be seated. Mr. Biron, whenever you're ready. Good morning and may it please the Court. Jonathan Biron on behalf of the appellant in this case, Timothy Ritchie. I'd like to begin with the argument that we raise concerning Bank of America's negligence in allowing eight years to pass between the time of Mr. Ritchie's default on the loan and the foreclosure sale. Because if the Court agrees with us on that and gives us the relief we're seeking on that, then that will obviate the need for the Court to reach the other thornier legal issues that we've raised. And to frame the issue, I think it's important to note that when we're talking about causation in the restitution context, a lot of courts, I haven't seen a Fourth Circuit case that says this, but a lot of courts around the country have said that the causal chain may not extend so far in terms of the facts or the time span as to become unreasonable. There's a Ninth Circuit case called Gamma Tech Industries 265 F3rd 917 that says exactly what I just quoted. So when we're talking about the time span, an eight-year delay, that implicates the question of whether it was unreasonable for Bank of America to wait that long. Now, I understand market forces in the real estate area can be a factor. We're not saying that that is irrelevant. But what we're saying is that in this case, we flagged the issue in our sentencing memo. We said the house deteriorated because of the bank. And where is there evidence in the record of the declining condition of the house or the property? There is no evidence. Neither side put in evidence on that point. Well, wouldn't you need to have put in evidence on that point to prove it to the court at sentencing now? Well, the government would have needed – our position is that because it's the government's burden in the facts to prove causation, in the context of this case where we put it in issue in our sentencing memo and they didn't – But you can't put something in issue simply by saying it. Well, if it's – well, I think if it were our burden, that would be – I would agree with that. But – Well, why isn't the presumption that the house and the property are perfectly fine? Well, because in – well, first of all, I don't think there's any law to support that there's a presumption along those lines. In eight years, there's an – Well, I've owned my house for 15 years, and no one I would hope would say that the property has been deteriorated. Well, that's because you've – that's because you've been in it. If there's a mortgage, I would assume that it's been paid. For eight years – I hope so. For eight years, there was no one paying on this note. Mr. Ritchie wasn't – The point is you're making a lot of assumptions about the condition of the property, which Judge Thacker, I think, suggests the burden might well be on you to prove. Well, here's why I think it's not. Because when we said what we did in our sentencing memo, the government's response in their memo filed the day before the sentencing hearing was very interesting. They didn't say the house is fine. They didn't say the drop in value from a $3.5 million appraised value in 2005 – and by the way, there's never been any whiff of something wrong with that appraisal – $3.5 million in 2005 to a $1.1 million sale price of foreclosure in 2015. They didn't say it was all market forces. They didn't say it was even worse in 2009. Mr. Ritchie is lucky we waited until 2015 to sell it. They didn't say it's not our burden. We're not going to figure it out. What they did say was we've talked to a bank official. The bank official has looked at the file. The bank official says it's not the bank's fault, despite the fact that the bank official apparently said that there were errors in the – various errors in the foreclosure process that delayed the proceedings. So when I read that, I thought, well, that's interesting. They're going to call this bank official to substantiate what they're saying in their memo, and I'll at least be able to cross-examine that bank official about the errors in the foreclosure process. Was this the bank official that was in the back of the courtroom? I have no idea what bank official this was because that person was never identified. I would have had no idea who to subpoena at the bank for that. Did you or someone say that there was someone in the courtroom available to testify about some issue? Yes, there was an underwriter, as I understand it, was there available to testify about the underwriting process, and the government didn't call that person either. And, you know, they had – so they had noticed two witnesses prior to the sentencing hearing, and that's not in the record, but I can tell you I went back and looked at this. There was an underwriter and then someone else who was also going to be called to testify, if called, about the loan application process. There was no one ever noticed as a potential witness on the restitution issues. So I think in this unique context where the government is essentially saying, we've checked, and believe us – well, believe the bank. They say it's not their fault. I think it is their burden to come in and back that up, because I think unlike the presumption that you've postulated about where someone's living in the house over a period of time that's not falling down, I think the assumption could be quite the opposite in the case where there's a home that dates back to the 1600s on a piece of property, and no one's paying on the note. Why should we think that that house is being maintained? And why can't the bank – if it is, why can't the bank – they're the ones who would be maintaining it. They're the ones who have access to that information. The burden should be on them. It's a lot easier for the government to pick up the phone and call the bank and say, hey, we've got this issue about what the bank did or didn't do. Can we talk to you? The bank's not going to talk to me if I call them. I can't do a 30B6 deposition in this context and say, hey, bank, give me someone who can talk about this. The government can do all that, and we see from the record the government didn't do that. They talked to someone, and I have no reason to believe they didn't, and that person apparently gave them information that for whatever reason they chose not to put into evidence at the sentencing. So I think in this case, and it's a unique situation, I wouldn't say that the court needs to issue some broad ruling on this, but in the unique circumstances of this case, government didn't meet its burden to show an unbroken chain of causation, and there was enough swirling around that that the government should have been on notice that that was necessary. One case that I didn't cite in the brief, but another just on this point, there's a case from the Ninth Circuit Court called Tyler 767 F. Second 1350, and in that case, the government was the victim. They took possession of stolen timber and then held it for evidentiary purposes, and the value of the timber declined over several years, and by the time the government sold the timber, they sold it at a substantial loss, and the district court in that case ordered restitution for the loss in value. The Ninth Circuit reversed that, and the court observed that any reduction in the timber's value stems from the government's decision to hold the timber during a period of declining prices, not from Tyler's criminal acts. And I would say that that's analogous to what's going on here. You know, there has to be some limit to what a bank can let happen before the causal chain is broken, and we say that reduction in price is the bank's fault, and here you have evidence of the record, the bank's own admission that there were at least some errors in the foreclosure process on various occasions that contributed to it, or at least needed to be explored, and the government didn't do that. So we're asking for a rule that says when a defendant raises a credible claim that an intervening circumstance has broken the chain of causation, it's incumbent upon the government to bring in evidence, at least prima facie, to say that there's no such break in the chain, and maybe at that point the burden could shift to the government. When you were at the sentencing proceeding, did you ask the judge for a ruling on this issue? No, I don't recall that I did. I think we talked about other – it was in the sentencing memo, but we talked about other aspects of the restitution argument. I don't recall that actually coming up front and center in the actual sentencing hearing, but I don't think that I needed to ask him for a ruling. I mean, we had raised it, and I think the court should have reached it. How do you distinguish the Supreme Court decision in Rovers that you cited? Well, in Rovers, there was no – in that case, the court was confident that the – what had happened was there were just declining land values, and the court said in that case that's not – just the declining value of the property due to market forces is not in itself a basis for a finding that there was an intervening cause. But in this case, again, it's not just that. And we have also a concurring opinion in that case by Justice Sotomayor, who suggested that it would – in a case that is somewhat analogous to yours, that it's your burden to make that show. She said that that's what she would – she would want to put the burden on the defendant. And respectfully, I don't think that comports with the statute that says that the burden is on the government to show proximate causation. So I don't – again, and the reason – specifically, that information is going to be – at least in this setting, the information is going to be peculiarly more available to the government than the defense to get information – to pry information loose from the bank as to the steps they did take or didn't take to timely foreclose and why they did what they did and didn't do what they – didn't do what they didn't do. So I don't think that – certainly Justice Sotomayor's idea of where to place the burdens in that particular situation applies here both for legal and, you know, because of the statute and also because of the particular circumstances that are at issue here. So on this point, if the court does agree with us that there was a burden here on the government and the government inexplicably failed to meet it, we would ask that the court essentially tell the government you had a bite of the apple. You had information that you said existed to rebut what the defense had said. You didn't meet the burden. You had a full and fair opportunity to do so, and you didn't. And that should be, in our view, the end of it because, you know, the government had information, had a chance. I don't think the government should get a second bite at that apple. Now, if the court doesn't resolve the case in that way, I think another issue that the court will need to reach is this issue about the actual cost of the loan to Bank of America when it acquired it. And I recognize this we didn't raise until the sentencing hearing. It, you know, at that point, it just kind of crossed our minds, and we weren't trying to wait on it. It just hadn't occurred to us that this was an issue until we were in the sentencing hearing. But we raised it, and Judge Bennett acknowledged that the world knows that Bank of America took over Countrywide and paid for its paper at a steep discount. So Bank of America's – we don't know the record. This you would need a remand, I think, for, but no one knows what Bank of America actually paid for this loan. I think it's fair to assume that it was a very steep discount because this was already a distressed asset. So I do think it's important for the court – Is this a remand issue or another one of these failures of proof? If the bank didn't present the evidence when it had its shot, why would they get a remand? On this one, I think what's different about this is, to be fair, we didn't raise it in our sentencing memo. The government had its theory with respect to restitution. Its theory was it's very simple. Take the outstanding principal amount, subtract the foreclosure sale price, and we said that's – at the sentencing hearing, essentially, we said that's wrong. You can't do it that way. So I think – I would love it if you would just say that they didn't meet their burden. But we're not asking for that. I think a remand on that issue, just exercising the court's discretion about how to send a case back, and what's fair, let's have an actual hearing where they come in with some – And when you say that Judge Bennett made that statement, is that akin to taking judicial notice of a fact? Well, he said that. I mean, that was the words he used. He said that you could take judicial notice of it. Let me ask you this. With respect to the cases that you cited in your brief, is there any need for a court to take judicial notice, or is the presumption that any time a successor bank takes over the mortgage portfolio of its predecessor, that there is – that the traditional calculation that Judge Bennett engaged in does not apply? Is that your position? Well, I haven't thought that through. What I would say is I don't know if you could have such a broad presumption, but certainly in the timeframe after 2008 where banks are failing, it probably is fair to assume that there's a discount. Now, there might be some – Some of the cases, the circuit cases, actually just say that. Any time there's successor – assumption of successor bank, that that's the rule? You don't apply the typical rules of a damage calculation in that context? Well, I hadn't seen those cases, but I'll certainly look for them after the argument and perhaps submit a 20HA letter. But I – Is that why you cited those cases? Well, no. I mean, what we said – I mean, we cited cases for a different proposition, which is simply that you look at the actual cost. It's not that there's a presumption that the – at least as I read the cases, it's not that there's necessarily a presumption that the price has declined, but the reason you look at the actual cost is you need to know what the lend – what the successor lender or the purchasing lender's skin in the game is. It could be that, you know, for example, hypothetically, if the Bank of America had bought Mr. Ritchie's loan for $2 million and only got $1.1 million in foreclosure, we wouldn't be having this discussion. We would still have other arguments about why we think they're not entitled to restitution, but they would have a loss. The problem is, in some cases, there is – you need to know for your starting point what the actual cost is so you can understand whether they've already been fully paid. Now, civilly, it's totally different, right? Bank of America can go after Mr. Ritchie civilly for the delta between the foreclosure sale price and the outstanding principal amount. They can go for interest. You know, that's the difference. Criminal restitution is designed to do something totally different. You're supposed to make the victim whole. In this case, if Bank of America paid less than $1.1 million, they've been made whole already. So that's why we think on remand we need to know what their – But their damage was – as I understand, they didn't get any interest that would have been projected to have been received, regardless of what they bought the note for. I thought it was just principal that was – Correct, and that's why they'd need to go – and that's restitution law. You don't get interest anyway. They'd have to go after him civilly for the interest because it's always the outstanding principal amounts in restitution just to make them whole on their out-of-pocket costs. Okay, thank you. You've got some time reserved for – Okay. Let's hear from the government. May it please the Court, good morning. I'm Kathleen Gabbin from the United States. I want to start first, I guess, in response to how Mr. Baran started his argument claiming that the causation element was not proven here because of the alleged neglect delay that the government did not meet its burden of proof. And I would submit the record is very clear that the government did make a prima facie case of the loss, the amount, and there is absolutely nothing in the record to indicate that there was anything unreasonable about the time period in which this sale took place, that there was any neglect, delay, inappropriate delay or damage to the property. In fact, I would point your honors to in the joint appendix, one of the exhibits that the government presented at the sentencing hearing was exhibit, I believe it's exhibit one, which is a summary, essentially, that was filed in the circuit court. What did JA say? I'm sorry, JA 280-81 was an affidavit filed by the bank, a compliance affidavit in the circuit court for Talbot County, Maryland, in which on the second page at JA 281, the bank listed the principal balance owed on the loan. It also, if you look down, there are all kinds of other expenses that the bank incurred that are not part of the restitution, but what's important here is that one of the items is property inspections preservation, costs of $1,175. So in my view, your honors, the prima facie case is there. The witness that was in the bank, Mr. Braun keeps complaining that somehow this witness in the courtroom, that it was the government's burden to call the witness. First of all, the government indicated at the beginning of the hearing that the witness was there if the judge wanted to hear anything more from the Bank of America, and the judge said no. Mr. Braun could call this witness. There was nothing preventing Mr. Braun in advance of the sentencing of subpoenaing a witness from the Bank of America to talk about the issues that he wanted to talk about. He simply stated in his sentencing memorandum in one sentence that there was this undue delay, that there was delay and damage to the property. No evidence. He could have called his own client. And then did he also argue that at sentencing? Not really, your honor. It was not an issue. At sentencing, really, the focus was really on causation and the amount of the restitution, I think. So he didn't raise the negligence and delay or deterioration of the property at all? No, your honor. And frankly, he could have called his own client, the defendant.  He could have called him to say what had happened to the house. So I would submit to your honors that the burden did in fact shift after the government made its prima facie case with the exhibits that it submitted to the defense to prove that that dollar figure was incorrect. And that did not happen. Even if the burden doesn't shift, it would seem to me the defendant would have the responsibility to produce some evidence to put the issue in controversy. Yes, your honor. That is absolutely the government's position. We made our case and there was nothing to rebut at all. So in that respect, I do think that the government certainly made its case. As for the amount of restitution, as Mr. Braun, to his credit, has acknowledged openly to the court, the issue of Bank of America buying the Countrywide at a discount was never mentioned in anything until in the middle of this hearing. Mr. Braun suddenly said, by the way, judge, everybody knows this. And the judge, and I would submit, and I have taken the position, and I think it's still true, your honors, that the judge did not take judicial notice. In the transcript when this issue came up, the judge at first asked me, can you say whether the loan was written off? And I said, I don't know that. Of course, now looking at this, of course it was not. Looking at JA 281, and that was always my understanding, but being suddenly asked this question, I said, I don't know. The judge then asked, well, I can take judicial notice, can't I, that everybody knows that, that the Bank of America bought Countrywide. And my response was, your honor, I think I don't know, because I don't think, and when I said that, Judge Bennett then shifted gears. He did not say, I'm taking judicial notice, that Bank of America bought Countrywide at a discount, including this loan. He never said that, and he didn't take that notice. What he then did was shift to, well, let me look at the government's exhibits. Let me see what evidence is here. And when he did that, he looked at government's exhibit one and government's exhibit two, which were the deed of the sale in 2015, plus the document I just referred to, government's exhibit one, and concluded that the loss amount was what we were saying it was for purposes of restitution. Well, even if he didn't take judicial notice, as I understand it, you're distinguishing these cases that the appellant cites simply on the basis that this wasn't a successor bank transaction? Your honor, what I'm distinguishing is, as I read the cases that the defense cited and the court opinions in those cases, the courts are looking at purchases being made essentially by a third party on a secondary market. That's not what happened in my understanding with what Bank of America did here. Bank of America bought the entire bank of Countrywide, the entire business, and became Countrywide. And so in doing so, Bank of America not only took on the assets, it also took on all the liabilities, all the problems that Countrywide may have had. It became Countrywide, as opposed to being a third party that buys some assets. And to me, I think that's a really significant difference because even the newspaper article that the defense cited in their brief, even though it was not in the record below, refers to all the monetary loss and disaster that was inflicted upon BOA when it actually, as a result of buying Countrywide. So to then say Bank of America might get a windfall because one of these many, many assets, when it bought the entire company. Warts and all. Warts and all. Somehow there's one can, even if one could figure that out, that somehow they would get a windfall if they get the principal balance back. But yet on the other hand, claiming that somehow Bank of America has dirty hands, which they argued at the sentencing, and therefore should take on, shouldn't get anything because Countrywide did something wrong. I mean, he wants it both ways. And I think that's inappropriate here. And on the facts of this case, as far as we know them, in terms of the purchase of an entire business, that's a successor bank in the sense of it's a successor business. It takes on the whole thing, not just an asset. Well, that has some attraction. But on the other hand, why should Mr. Ritchie be on the hook for the bank's decision to take on Countrywide's liabilities? We should be focused, it seems to me, solely on the mortgage at issue in this case. And if in fact it was true that the bank purchased that mortgage at a substantial discount, admitted for the moment the difficulty in trying to assess that, what does it matter that the bank took on Countrywide's liabilities? That's not Mr. Ritchie's problem. But, Your Honor, I think that's a different construct. That's a different factual situation than what we have here. Here that's not what we have. So I think if we were in a situation where Bank of America bought some of the And Countrywide continued. You say all of these cases, and I've read most of them, not all, all deal with secondary markets. As I read them, Your Honor, yes. I mean, some of the cases don't go into great detail. But as I understand them, yes. They're not just buying over a whole business. Does any court make the distinction that you're making here? Not that I'm aware of, Your Honor. But I can certainly double-check and look. But I have not seen that distinction in the cases. But I just think as a practical matter and as the concept of the meaning of harm to the victim, where you have a successor that just takes over the entire business. They are the victim, and they're not getting a windfall because if they hadn't taken over the business and Countrywide continued, I think we'd all agree Countrywide gets the full amount, the full balance after foreclosure and sale of the collateral. And what I'm saying to the court is there's no reason where the company that buys the entire business shouldn't be in that same position. It's different than when you're taking a calculated business risk or investment by buying selected assets on a secondary market. Then I think that's part of the inherent calculation that you're doing as a business to buy these assets. But here where you're buying the entire business, I think it goes beyond that. So I would submit that the government's calculation was correct and that to the extent there was any question with the defense bringing it up, I would submit that it was their burden to bring it up. And they should not, as Mr. Braun says, they should not get the second bite of the apple because they brought it up at the last minute. And particularly considering the value of the property, the documents that are in the record, I would submit that the restitution mat is certainly appropriate. And in terms of the other issues that were raised, I'm certainly happy to address them. I know in Mr. Braun's argument he did not raise, the court did not get to those other issues. How do we know that the, I guess, I've read your briefs, I guess the MVRA, how do we know that the MVRA is actually a statute that applies in this case? In terms of that it wasn't mentioned by Judge Bennett specifically? Because primarily I would say that because the pre-sentence report specifically said that the MVRA applied to this case. Does it make a difference? Explain to me how these statutes are similar or dissimilar. The only real operative difference here is that if it was the VWPA, the court could make findings as to the defendant's ability to pay and order a lesser amount or choose not to order restitution at all. Under the standards otherwise, who's the victim, causation, that's all the same. But when both apply, how does the court decide which one to apply? If it's mandatory, it's mandatory. So the court would apply the mandatory one. All we need to figure out here is does the MVRA apply? Yes, yes. And we say it does. Absolutely. And pre-sentence report says it did. And the defense did not object to that, either in writing prior to the hearing or at the hearing itself. When asked, Judge Bennett specifically said, okay, so the issue of loss is here. Any other issues, any objections? And the answer was no, they're not. And the judge did not specifically say, I find the MVRA. But the whole context, looking at the whole record, it's very clear that the parties were arguing about the MVRA. Did the court adopt the pre-sentence report? Essentially, yes. The court said, didn't use the words adopt, but said that I have read the entire pre-sentence report and all the attachments. And so in my view, he did adopt it. There was no dispute about the statements that were in it. So for those reasons, the government submits that the MVRA applied, and that the court found that it applied. I'm happy to argue any other aspects of the briefs. I think we understand your argument. Okay. Thank you, Your Honor. You're on. Your Honor, we haven't found a case either that discusses this windfall concept in the context of a purchase of a bank's assets and liabilities. I will say, there's nothing in the record. I think we'd need a remand at the very least just to actually understand what happened and what the purchase really was and what was purchased, whether it's assets, liabilities, or some combination. So the record is not developed on that. But I think it's important that the court give the district court some guidance about once that's sorted out, what is the starting point? And to me, the distinction that Ms. Gavin raises about let's assume for the moment that it was just a purchase of all assets and liabilities, in our view, that's a distinction without a difference because no matter what, they're still buying the assets at a discount, some sort of amorphous idea that they also had liabilities. As you said, Judge Diaz, we have to focus on this asset because essentially what the government's arguing is, if I'm understanding Ms. Gavin, is that one of the things that Bank of America may have purchased is the right of Countrywide to get restitution in this and maybe other cases where Countrywide would have gotten restitution if they had stayed in existence. So what they're saying is, we bought that right at a discount when we purchased everything. But you can't buy someone's right to get restitution at a discount because that lies in the face of the point that you're making the actual victim hold. Now, Countrywide went out of business. When banks go out of business, and there are cases, I found a case, there are several that I've seen where it's time for restitution, a bank is out of business, and there's no victim to give restitution to. That's really what happened here. Even if Countrywide, their assets and liabilities became part of Bank of America, Countrywide itself didn't exist anymore. If Countrywide had existed, yes, they'd be in a different position than Bank of America. But we really need Judge Bennett to understand as best that can be done. And I grant you, it could be a hard process. But I bet somewhere in the bowels of Bank of America, you can get some information about what the allocation was of distressed loans, and you can make a reasonable estimate. That's what the statutes require, just a reasonable estimate that makes sense. And I think Judge Bennett can probably do that. But he has to be given the opportunity to do that. Now, on the question you asked Ms. Gavin about the basis for understanding which statute was applied, first of all, it is a big deal because if we're correct that you apply a categorical approach in analyzing whether the MVRA applies, I haven't heard anything from government to indicate that, if I'm correct about the categorical approach, that the MVRA was the proper statute. So then we'd need a remand just to let Judge Bennett exercise his discretion. But if we disagree with you on that and there's a choice of two statutes, do you agree that the MVRA is the default statute in this case? Well, I disagree with that. I agree that the court would, if the court had found that the MVRA applied, then the MVRA takes precedence. But I believe the record is not clear that that's what Judge Bennett did because the one sentence reference in the pre-sentence report. Well, even if it's not clear, we have some case law that suggests that we can try to figure that out. Right, although I think if the court holds that the MVRA could be applied, then that's right. I mean, I think that I'm not sure in this context that we'd need a remand just to have Judge Bennett say it's the MVRA. If you find that the MVRA applies, of course, we argue that it doesn't. Sure. And I haven't seen anything that persuades me that the government's correct. I mean, I think that the cases that we cite and the language in the restitution statute. Well, except that I guess you know, I hope you know, that we're such huge fans of the categorical approach that we just can't wait to apply it to all other matters. Well, I know it's been a hot-button issue. That's an understatement. And I don't know if I'm sorry to add another one to your pile, but I think it's important that the court consider that. And it's not as if the government, if they felt that they could have proven bank fraud, they could have charged that. They elected not to. And we really, you know, this particular offense just shouldn't be the basis for an MVRA, the application of the MVRA. There are many, many, many Title 18 offenses that will still be applicable after the court hopefully rules with us on this. Just not this one or others that don't have as an element any effect on property. With that, I will submit on the papers on the rest and thank you very much. Thank you, Mr. Fearon. We'll come down and greet counsel and then go into the next case.
judges: William B. Traxler, Jr., Albert Diaz, Stephanie D. Thacker